**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )   Civil Action No. 00-940 (RWR) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) ) |
| Defendant. | ) ) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Akin, Gump, Strauss, Hauer & Feld, L.L.P. ("Akin Gump") sued the United States Department of Justice ("DOJ"), challenging DOJ's decision to withhold documents that Akin Gump requested pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Both parties moved for summary judgment. Because DOJ's disclosures in this case do not provide (1) an adequate description of each discrete redaction, (2) a specific citation to and explanation of the authority to refuse to disclose that is correlated with each discrete redaction, and (3) sufficient information to determine whether all reasonably segregable information has been segregated and disclosed, both motions for summary judgment will be denied and DOJ will be directed to file disclosures that fairly meet the requirements of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973).

- 2 -

BACKGROUND

In connection with an action pending in the federal district court in Colorado,[1] Jack J. Grynberg was ordered to produce documents for the defendants in that case ("Grynberg defendants") that had been delivered on his behalf to the United States Attorney's Office for the District of Colorado.  (Pl.'s Mot. Summ. J., Pl.'s Stmt. Mat. Facts ("Pl.'s Stmt.") ¶ 2.)  Concerned that not all relevant records had been produced, the Grynberg defendants requested unredacted copies of those records directly from the U.S. Attorney's Office.  (Pl.'s Stmt., Ex. B, Aff. Timothy M. Rastello ("Rastello Aff.") ¶¶ 4-5; Ex. C, Aff. Michael L. Beatty ("Beatty Aff.") ¶ 4.)  In response, the U.S. Attorney's Office delivered copies of the requested documents to Grynberg's counsel, who then provided the copies to the Grynberg defendants. (Def.'s Mot. Summ. J., Mem. of P. & A. ("Def.'s Mot. Summ. J.") at 2.)

This suit arises out of a FOIA request made by Akin Gump to DOJ for copies of the documents at issue, along with any related correspondence between Grynberg and the local U.S. Attorney's Office.  (Pl.'s Mot. Summ. J., Mem. of P. & A. ("Pl.'s Mot. Summ. J.") at 4.)  DOJ denied Akin Gump's request, claiming that the

---

[1]    United States ex rel. Grynberg v. KN Energy, Inc., Civil Action No. 92-2000 (D. Col.) ("KN Energy") (later proceeding reported at In re: Natural Gay Royalties Qui Tam Litig., 467 F. Supp. 2d 1117 (D. Wyo. 2006)).

- 3 -

requested records pertained to a third-party individual and that
since Akin Gump failed to provide a waiver allowing it to release
this information, disclosure would violate the Privacy Act, 5
U.S.C. § 552a.  (Def.'s Mot. Summ. J. at 6.)  DOJ also invoked
FOIA Exemptions 6 and 7, 5 U.S.C. §§ 552(b)(6), (7)(C), deeming
the records generally exempt from disclosure while admitting that
it had not yet reviewed the requested records in detail.  (Def.'s
Mot. Summ. J., Decl. John F. Boseker ("Boseker Decl.") ¶ 6; Ex.
B.)  At some later time, DOJ identified and advised Akin Gump of
approximately 832 pages that were responsive to the request but
did not disclose the documents.  (Boseker Decl. ¶ 7.)  Akin Gump
filed an administrative appeal of the initial decision which was
subsequently denied.  (Def.'s Mot. Summ. J., Ex. C.)  After
further review of the documents, DOJ informed Akin Gump of
additional applicable exemptions that justified non-disclosure.
(Id. ¶¶ 10-11.)

DOJ argues not only that the Privacy Act precludes
disclosure of the requested documents, but also that the
documents fall within the protection of up to six FOIA
exemptions.[2]  Akin Gump disputes these claims, and argues

---

[2]    In initially denying Akin Gump's request and appeal, DOJ
asserted Exemptions 6 and 7(C), which protect documents whose
disclosure may constitute undue invasions of privacy.  DOJ later
cited Exemptions 5 (materials available only to parties in
litigation with the agency) and 7(D) (information arising from
confidential sources) to justify categorical exemption from
disclosure.  DOJ also claims Exemptions 4 (trade secrets) and 9
(geological and geophysical information) to justify partial

- 4 -

alternatively that DOJ's submission of the documents to the
Grynberg Defendants constitutes a waiver of this protection, and
DOJ should be ordered to release the requested information.

DISCUSSION

Summary judgment is appropriate when there exists no genuine
issue as to any material fact and the moving party is entitled to
a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The
burden falls on the moving party to provide a sufficient factual
record that demonstrates the absence of such a genuine issue of
material fact.  See Beard v. Banks, 126 S. Ct. 2572, 2578 (2006).
A court must draw all reasonable inferences from the evidentiary
record in favor of the non-moving party.  See Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 255 (1986).  In a FOIA suit, an agency
is entitled to summary judgment upon demonstrating that no
material facts are in dispute and that all information that falls
within the class requested either has been produced, is
unidentifiable, or is exempt from disclosure.  Students Against
Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001);
Weisburg v. Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

_____

exemptions for the documents and states that it will provide
further justification for these exemptions if the rationale for
the other cited exemptions is deemed insufficient.  (Boseker
Decl. ¶¶ 28-29.)  Because additional information is needed
regarding DOJ's invocation of Exemptions 5, 6, 7(C) and 7(D),
consideration of the applicability of Exemptions 4 and 9 will be
deferred.

- 5 -

A district court must conduct *de novo* review of the record in a
FOIA case, and the agency resisting disclosure bears the burden
of persuasion in defending its action.  5 U.S.C. § 552(a)(4)(B);
see also Long v. Dep't of Justice, 450 F. Supp. 2d 42, 53 (D.D.C.
2006).

The FOIA requires agencies to comply with requests to make
their records available to the public, unless information is
exempted by clear statutory language.  5 U.S.C. §§ 552(a), (b);
Oglesby v. Dep't of Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996).
Although there is a "strong presumption in favor of disclosure,"
Dep't of State v. Ray, 502 U.S. 164, 173 (1991), there are nine
exemptions to disclosure set forth in 5 U.S.C. § 552(b).  These
exemptions are to be construed as narrowly as possible to provide
the maximum access to agency information based on the overall
purpose of the Act.  Vaughn, 484 F.2d at 823.  Here, DOJ must
show that there is no genuine issue as to whether it properly
invoked the statutory exemptions authorized by §§ 552(b)(5),
(b)(6), (b)(7)(C), and (b)(7)(D) to withhold information, and
that all non-exempt information that is reasonably segregable has
been segregated and disclosed.

Because the party requesting disclosure is at a disadvantage
to argue misapplication of an exemption given that it cannot know
the precise contents of the documents withheld, a factual dispute
may arise regarding whether the documents actually fit within the

- 6 -

cited exemptions.  Vaughn, 484 F.2d at 823-24.  To enable the
requesting party an opportunity to effectively challenge the
applicability of the exemption and the court to properly assess
its validity, the party in possession of the materials must
explain the specific reason for the agency's nondisclosure.  Id.
at 826; see, e.g., Oglesby, 79 F.3d at 1176 ("The description and
explanation the agency offers should reveal as much detail as
possible as to the nature of the document, without actually
disclosing information that deserves protection.").  This
explanation may include a detailed description of each document
being withheld and take the form of a Vaughn index.  Students
Against Genocide, 257 F.3d at 832.  Where, as here, "'a claimed
FOIA exemption consists of a generic exclusion, dependent upon
the category of records rather than the subject matter which each
individual record contains, resort to a Vaughn index is
futile[,]'"  Maydak v. Dep't of Justice, 218 F.3d 760, 766 (D.C.
Cir. 2000) (quoting Church of Scientology v. Internal Revenue
Service, 792 F.2d 146, 152 (D.C. Cir. 1986)), and the government
may satisfy its burden by other means.  Vionche v. Fed. Bureau of
Investigation, 412 F. Supp. 2d 60, 65 (D.D.C. 2006) (noting that
because "courts have repeatedly held that it is the function of a
Vaughn index rather than its form that is important, . . . an
agency does not have to provide an index per se").  Regardless of
the form of the government's declaration, it must show why

- 7 -

exemption is appropriate and conclusory statements and generalized claims of exemption are insufficient to justify withholding. Vaughn, 484 F.2d at 826; see also Mead Data Cent., Inc. v. Dep't of Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977) ("[T]he burden which the FOIA specifically places on the Government to show that the information withheld is exempt from disclosure cannot be satisfied by the sweeping and conclusory citation of an exemption . . . ."). Where disclosures are not sufficiently detailed to permit a meaningful *de novo* review, a court may order the agency to submit more detailed disclosures. Vionche, 412 F. Supp. 2d at 65.

Furthermore, because "[t]he focus of the FOIA is information, not documents, . . . an agency cannot justify withholding an entire document simply by showing that it contains some exempt material . . . . [N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Mead Data, 566 F.2d at 260; see also 5 U.S.C. § 552(b) (requiring disclosure of "any reasonably segregable portion" of an otherwise exempt record). If the government argues that none of the material in a document is segregable, it must provide a reasonably detailed explanation for this claim. "However, the justification need not be so detailed so as to compromise the nature of the withheld information." Vionche, 412 F. Supp. 2d at 70.

- 8 -

I.   THE PRIVACY ACT

DOJ first argues that the Privacy Act bars disclosure because the requested records pertain to a third-party individual from whom Akin Gump has not received prior written consent for release.  (Def.'s Mot. Summ. J. at 5-6.)  The Privacy Act precludes an agency from disclosing

> any record [of information about an individual] which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be . . . (2) required under section 552 of this title [FOIA].

5 U.S.C. §§ 552a(a)(4), (b)(2).

Invoking the Privacy Act to refuse a FOIA request does not complete the analysis that DOJ must conduct.  That Act is not a FOIA exemption upon which DOJ can rely, and the FOIA sometimes mandates release of information that an agency might otherwise be prohibited from releasing under the Privacy Act.  See Dep't of Defense v. Fed. Labor Relations Auth., 510 U.S. 487, 491 (1994) ("[The Privacy] Act does not bar disclosure of personal information if disclosure would be required under section 552 of . . . the Freedom of Information Act[.]") (internal quotation omitted).  Whether FOIA mandates disclosure or excuses it under exemptions DOJ asserts is discussed below.

II.  FOIA EXEMPTIONS

1.    Exemption 5

Exemption 5 provides that "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" are exempt from disclosure under the FOIA.  5 U.S.C. § 552(b)(5). The exemption is intended to protect the decision-making processes of government agencies and to encourage open discussion of legal and policy issues.  <u>Leadership Conf. on Civil Rights v. Gonzales</u>, 404 F. Supp. 2d 246, 253 (D.D.C. 2005).  For a document to be exempt under this provision, its source must be a government agency, <u>Dep't of the Interior v. Klamath Water Users Protective Ass'n</u>, 532 U.S. 1, 8 (2001), and it must fall within the ambit of documents "'normally privileged in the civil discovery context.'"  <u>Leadership Conf.</u>, 404 F. Supp. 2d at 253 (quoting <u>Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 148 (1975)).  Those privileges include attorney-client privilege, work product, and the deliberative process privilege. <u>Klamath Water Users</u>, 532 U.S. at 8.

DOJ maintains that all of the requested information is exempt under the attorney-client and work product privilege because <u>KN Energy</u> is a False Claims Act qui tam case and the U.S. Attorney's Office's submission of the documents to Grynberg's

- 10 -

counsel occurred in an attorney-client context.[3]  When

information is shared between the relator and the United States,

the attorney-client and work product privileges are not waived

because any communications are conducted in furtherance of joint

prosecution and on the basis of common interests.  See United

States ex rel. Poque v. Diabetes Treatment Ctrs. of Am., Civil

Action No. 99-3298 (RCL), 2004 WL 2009413, *3-4 (D.D.C. May 17,

2004).

There are no privileged communications involved here

because the government released documents to the Grynberg

defendants, a third party to the government-relator relationship,

via Grynberg's attorney.  The information was not released only

to Grynberg as a co-party and DOJ does not allege that the

government asked Grynberg's attorney to ensure confidentiality.

Instead, the government handed over the documents on the

assumption that they would be passed on.  (See Def.'s Mot. Summ.

J. at 17 ("[T]he unredacted documents were given to the Grynberg

Law Firm [by the U.S. Attorney's Office] in order that

Mr. Grynberg could comply with the Court's Order to turn over

documents to the [Grynberg] defendants.").)

---

[3]     Akin Gump disputes that KN Energy is a qui tam case and
provides an affidavit stating that Grynberg's lawsuit was not
filed under the False Claims Act.  (Pl.'s Mem. of P. & A. in
Reply to Def.'s Opp'n ("Pl.'s Reply"), Ex. A., Suppl. Aff. of
Michael Beatty ¶ 4.)  However, because DOJ has not provided a
detailed description of the requested documents, no determination
will be made about the nature of the underlying lawsuit.

DOJ also has not made the required showing under <u>Vaughn</u> to justify application of this exemption.  All subject records are fully withheld without any description of their content to determine if generic exclusion is appropriate.  Without more detailed information, there is no basis for evaluating whether the withheld material properly falls within the exemption.  The only effort made to justify invocation of this exemption is the submission of a declaration from John Boseker.  The declaration does not provide particularized information about the exact nature of the documents and which ones, if any, were created by the government in anticipation of litigation.  (<u>See</u> Boseker Decl. ¶¶ 25-26 (describing the documents generally as investigation files of the U.S. Attorney's Office without specifying the exact nature of these materials).)  The broad and conclusory statements provided in the Boseker declaration do not justify invoking Exemption 5 to categorically exempt the requested documents.  <u>See</u> <u>Oglesby v. Dep't of Justice</u>, Civil Action No. 02-603 (RWR), 2007 WL 625852, at * 2 (D.D.C. Feb. 27, 2007) ("An agency's FOIA response must be sufficiently precise and explanatory that a court can 'effectively and efficiently . . . evaluate the factual nature of disputed information.'" (quoting <u>Vaughn</u>, 484 F.2d at 826)).

- 12 -

2.   Exemption 6

DOJ also contends that the requested information is
categorically exempt under Exemption 6 because it pertains to a
particular individual identifiable in the records and none of the
information can be segregated.  (Boseker Decl. ¶ 17.)
Additionally, DOJ alleges that the privacy rights that would be
invaded by disclosure outweigh any public interest in the
documents.  (Def.'s Reply to Pl.'s Opp'n ("Def.'s Reply") at 3.)

Exemption 6 of the FOIA provides protection against
disclosure of "personnel and medical files and similar files the
disclosure of which would constitute a clearly unwarranted
invasion of personal privacy[.]"  5 U.S.C. § 552(b)(6).
Congress' primary purpose in drafting Exemption 6 was to "provide
for confidentiality of personal matters."  Dep't of State v.
Wash. Post Co., 456 U.S. 595, 600 (1982) (internal quotations
omitted).  Once the threshold requirement – - the information's
location in personnel or medical files -- has been established,
the inquiry turns to whether the disclosure of the records would
constitute a clearly unwarranted invasion of privacy.  Leadership
Conf., 404 F. Supp. 2d at 256.  A court must then undertake a
balancing analysis of the respective weight of the privacy
interest with the "'presumption in favor of disclosure [that] is
as strong as can be found anywhere in the Act.'"  Nat'l Ass'n of
Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002)

- 13 -

(quoting <u>Wash. Post Co.</u> <u>v. Dep't of Health & Human Servs.</u>, 690
F.2d 252, 261 (D.C. Cir. 1982)).

   Although it is unclear whether the requested records pass
the minimum threshold of being "personnel and medical files and
similar files" given the lack of information provided about these
documents, the key question is whether Grynberg's interest in
privacy outweighs the FOIA's "basic policy of opening agency
action to the light of public scrutiny."  <u>Long</u>, 450 F. Supp. 2d
at 62 (internal quotations omitted).  However, not every
incidental invasion of privacy is protected by Exemption 6; only
those invasions that implicate private personal details may be
precluded.  <u>Cf.</u> <u>Fed. Labor Relations Auth.</u>, 510 U.S. at 500
(explaining that the relevant privacy interest is an
"individual's interest in controlling the dissemination of
information regarding personal matters").  Thus, for such
information to be protected, it must "'compromise a substantial,
as opposed to a <i>de minimis</i>, privacy interest.'"  <u>Nat'l Ass'n of</u>
<u>Home Builders</u>, 309 F.3d at 33 (quoting <u>Nat'l Ass'n of Retired</u>
<u>Fed. Employees v. Horner</u>, 879 F.2d 873, 874 (D.C. Cir. 1989)).

   The "public interest" inquiry requires consideration of
whether disclosure would "'contribute significantly to public
understanding of the operations or activities of government.'"
<u>Long</u>, 450 F. Supp. 2d at 63 (quoting <u>Fed. Labor Relations Auth.</u>,
510 U.S. at 495).  When the material in the government's control

- 14 -

is a compilation of information about private citizens, rather than a record of government actions, there is little legitimate public interest that would outweigh the invasion of privacy because the information reveals little or nothing about an agency's own conduct.  See Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 780 (1989) (explaining that when the requested information is not a record of "'what the Government is up to,' the privacy interest . . . is in fact at its apex while the FOIA-based public interest is at its nadir").

     DOJ has failed to meet its initial burden of justifying the use of the exemption because it has not proven that Grynberg's substantial privacy interest will be violated or proven the extent to which this interest may be invaded by disclosure.  The Boseker declaration contains only a conclusory statement that the "release of this information was determined to constitute a clearly unwarranted invasion of the personal privacy of Mr. Grynberg and all other third party individuals in a manner that could subject such individuals to harassment" (Boseker Decl. ¶ 17), without describing the nature of the information that warrants privacy or establishing that nothing in these records is reasonably segregable.  Even if a substantial privacy invasion is involved, DOJ has not shown that it is entitled to categorically withhold the documents under Exemption 6 because it has not provided information describing, to the fullest extent possible,

- 15 -

the content of the requested information, see Oglesby, 2007 WL
625852, at *5 (rejecting an FBI declaration that did not describe
the "content of either whole documents or portions withheld"), or
a proper segregability analysis that cites to specific documents
as non-segregable.  Vionche, 412 F. Supp. 2d at 70.

    3.    Exemption 7(C)

    Similarly, DOJ argues that all the requested information can
be categorically withheld under Exemption 7(C) because it was
compiled for law enforcement purposes and identifies third
parties such that disclosure would result in an invasion of their
privacy.  (Boseker Decl. ¶ 14.)

    The FOIA protects the disclosure of "records or information
compiled for law enforcement purposes, but only to the extent
that the production of such law enforcement records or
information . . . (C) could reasonably be expected to constitute
an unwarranted invasion of personal privacy[.]"  5 U.S.C.
§ 552(b)(7)(C).  Like Exemption 6, Exemption 7(C) also protects
against privacy intrusions by allowing agencies to withhold
documents that reveal the identities of suspects and others of
investigatory interest.  Leadership Conf., 404 F. Supp. 2d at 256
(citing Reporters Comm., 489 U.S. at 780).  However, the standard
for evaluating an alleged privacy invasion due to the disclosure
of records compiled for law enforcement purposes is broader than
that applicable to personnel, medical and similar files in two

respects.  First, whereas Exemption 6 requires that the invasion
of privacy be "clearly unwarranted," Exemption 7(C) simply
requires that the invasion be "unwarranted."  See Reporters
Comm., 489 U.S. at 756.  Second, Exemption 6 refers to
disclosures that "would constitute" an invasion of privacy, while
Exemption 7(C) encompasses any disclosure that "could reasonably
be expected to constitute" such an invasion.  Id.  Despite these
distinctions, the general balancing test applied to determine the
extent of the privacy invasion is the same as that under
Exemption 6.  Long, 450 F. Supp. 2d at 63 (stating that the D.C.
Circuit "'has deemed the privacy inquiry of Exemptions 6 and 7(C)
to be essentially the same'" (quoting Judicial Watch, Inc. v.
Dep't of Justice, 365 F.3d 1108, 1125 (D.C. Cir. 2004)).

While this exemption provides more protection for
information compiled for law enforcement purposes than that
provided for personnel and similar matters, DOJ has still not met
its burden.  Although it is uncontested that at least some of the
requested information was compiled for the enforcement of a civil
litigation matter, DOJ must prove that it is reasonably expected
that disclosure would result in an unwarranted invasion of
privacy.  Notwithstanding the lowered threshold of privacy
required, a categorical withholding under Exemption 7(C) cannot

- 17 -

be justified without further clarification of the subject matter

of the records.[4]

4.   Exemption 7(D)

Finally, DOJ contends that all of the requested information

is categorically exempt from disclosure under Exemption 7(D)

because it was assembled for law enforcement purposes and was

provided by a confidential source.   (Boseker Decl. ¶ 18.)

The FOIA exempts the disclosure of

> records or information compiled for law
> enforcement purposes, but only to the extent
> that the production of such law enforcement
> records or information . . . (D) could
> reasonably be expected to disclose the
> identity of a confidential source . . . ,
> and, in the case of a record or information
> compiled by criminal law enforcement
> authority in the course of a criminal

---

[4]   DOJ claims that <u>SafeCard Servs., Inc. v. SEC</u> allows the categorical withholding of information under Exemption 7(C) if the information identifies third parties in law enforcement records and disclosure of such information is not necessary "to confirm or refute compelling evidence the agency is engaged in illegal activity."  926 F.2d 1197, 1206 (D.C. Cir. 1991).  DOJ asserts that because Akin Gump has not claimed that the agency is involved in illegal activities, there is no legitimate public interest and categorical withholding is justified.  (Def.'s Reply at 4.)  While <u>SafeCard</u> permits an agency to categorically exempt and withhold the names and addresses of private individuals appearing in files within the scope of Exemption 7(C), so as not to reveal the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations, <u>SafeCard</u> has not been interpreted to permit the agency to exempt from disclosure *all* the material in an investigatory record.  <u>See Nation Magazine, Wash. Bureau v. Customs Serv.</u>, 71 F.3d 885, 896 (D.C. Cir. 1995).  As a general rule, <u>SafeCard</u> directs an agency to redact the names, addresses, or other identifiers of individuals mentioned in investigatory files in order to protect the privacy of those persons.  <u>Id.</u> at 896.

- 18 -

> investigation or by an agency conducting a
> lawful national security intelligence
> investigation, information furnished by a
> confidential source . . . .

5 U.S.C. § 552(b)(7).  Under Exemption 7(D), an agency must show
that an individual provided information to the government for the
purpose of a criminal or national security investigation under
either (1) an express assurance of confidentiality or (2) under
circumstances that support an implied assurance of
confidentiality.  See Piper v. Dep't of Justice, 294 F. Supp. 2d
16, 28 (D.D.C. 2003).

DOJ misconstrues the application of this exemption.
Although it can be used to protect the identity of a confidential
source of information provided for law enforcement purposes, the
language and structure of 5 U.S.C. § 552(b)(7)(D) explicitly
require that the information relate to a criminal or national
security investigation.  Here, DOJ does not claim that the
documents are material to either type of investigation.  While
the exemption permits redacting the identity of the confidential
source, DOJ has not established that one or more confidential
sources provided all of the information requested, thus
justifying the use of Exemption 7(D) in this situation.

III. GENERAL WAIVER OF FOIA EXEMPTIONS

Akin Gump argues that even if some of the information is
categorically exempt, DOJ waived the right to claim such
exemptions upon the release of unredacted versions of the records

- 19 -

to the Grynberg defendants, a third party.  (Pl.'s Mem. of P. &
A. in Reply to Def.'s Opp'n ("Pl.'s Reply") at 7.)  Additionally,
Akin Gump identifies a second instance of disclosure of allegedly
the same documents to a third party by the Department of the
Interior.  (Pl.'s Supp. Mem. in Supp. of Mot. for Summ. J.
("Pl.'s Suppl. Mem.") at 8.)

   However, Akin Gump has not persuasively demonstrated that
DOJ generally waived its right to claim any exemptions due to
prior submission of the requested documents.  Although DOJ waived
its attorney-client privilege under Exemption 5 and did not
justify invoking Exemption 7(D), DOJ has not clearly waived its
right to invoke Exemptions 6, 7(C) or 7(D).  "[T]he fact that
some of the personal information contained in these records
already has been made public in some form does not eliminate the
privacy interest in avoiding further disclosure by the
Government."  Long, 450 F. Supp. 2d at 68 (citing Reporters
Comm., 489 U.S. at 762-63); see also Leadership Conf., 404 F.
Supp. 2d at 258 (explaining that "substantial privacy interests
can exist in personal information even though the information has
been made available to the general public").  Additionally, the
record is insufficient to determine if the second alleged
incident of public disclosure constitutes waiver as it is not
clear that those documents are identical to the subject records
in this case.  In any case, it is not necessary to determine

- 20 -

whether a general waiver of FOIA exemptions has occurred because DOJ has not met its burden to prove that the cited exemptions are applicable in the first instance.

III. <u>VAUGHN</u> INDEX

Notwithstanding its request for summary judgment, Akin Gump requests an order mandating the production of a <u>Vaughn</u> index. (Pl.'s Reply at 13.)  DOJ has not produced a <u>Vaughn</u> index and has relied instead on the Boseker declaration in its place.  Due to the paucity of detail provided in the declaration and because the "disclosures here do not measure up to the obligations imposed on an agency in a FOIA action," <u>Oglesby</u>, 2007 WL 625852, at *5, summary judgment will not be granted to either party.  <u>See</u> <u>Vaughn</u>, 484 F.2d at 824 (allowing courts to proceed directly to legal determinations of FOIA exemption applicability only when "the factual nature of the documents were so clearly established on the record"); <u>see also</u> <u>Campbell v. Dep't of Justice</u>, 164 F.3d 20, 37 (D.C. Cir. 1998) (reversing district court's finding of a FOIA exemption and remanding for a more detailed explanation for the exemption); <u>Oglesby</u>, 79 F.3d at 1187 (remanding case to district court because of inadequate <u>Vaughn</u> indices); <u>King v. Dep't of Justice</u>, 830 F.2d 210, 225 (D.C. Cir. 1987) (reversing summary judgment due to inadequate <u>Vaughn</u> index and requiring the district court to conduct an in camera inspection of the documents at issue or order a more detailed <u>Vaughn</u> index).

- 21 -

Although submission of a <u>Vaughn</u> index might not be required, DOJ
has not met its burden of producing materials that substantiate
its use of the claimed exemptions.  <u>Cf</u>. <u>Long</u>, 450 F. Supp. 2d at
53-54 (explaining that summary judgment may be awarded based
solely on the affidavits and declarations provided by the agency
as long as the justification for invoking the exemptions is
specifically detailed).

    In light of the factual questions surrounding the requested
documents, a genuine issue of material fact exists as to the
applicability of the claimed FOIA exemptions and the extent to
which a substantial invasion of privacy may result from
disclosure.  Therefore, neither motion for summary judgment is
supported by sufficient facts in the record to warrant judgment
as a matter of law.  The parties' requests for summary judgment
will be denied and DOJ will be ordered to produce either a <u>Vaughn</u>
index or additional declarations providing justification for the
claimed exemptions.

<u>CONCLUSION AND ORDER</u>

    Because genuine issues of material fact remain as to whether
certain FOIA exemptions should be applied, and because neither
party has carried its respective burden of proof on these issues,
both parties' motions for summary judgment will be denied.
Accordingly, it is hereby

- 22 -

ORDERED that Akin Gump's motion [9] for summary judgment be, and hereby is, DENIED without prejudice.  It is further

ORDERED that DOJ's motion [13] for summary judgement be, and hereby is, DENIED without prejudice.

The parties are directed to confer and within 45 days, file a proposed schedule upon which this case shall proceed, including deadlines for DOJ's re-review of records and preparation of either an appropriate <u>Vaughn</u> index or an accompanying declaration.

SIGNED this 4th day of September, 2007.

                              _____/s/_____
                              RICHARD W. ROBERTS
                              United States District Judge